FILED

2024 Feb-16  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **VICTOR SIMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:22-cv-178-ACA** |
| | ) | |
| **CITY OF HOMEWOOD,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Victor Sims, a black male, was formerly employed as a police officer by Defendant City of Homewood. In August 2021, Mr. Sims and one of his supervisors discussed the possibility of reassigning Mr. Sims from the Special Investigations Unit to a different unit effective October 2021.

After this conversation, Mr. Sims internally complained to those in his chain of command that the reassignment was because of a racially discriminatory motive. Mr. Sims further complained that the Department had a culture of racial discrimination and bias. Members of the Department's Internal Affairs Division began to investigate Mr. Sims's complaint and determined that his claims were unfounded. Based on Mr. Sims's perception that the Department did not intend to investigate his allegations in good faith, Mr. Sims filed a charge of discrimination

with the Equal Employer Opportunity Commission. He later amended that charge to include a claim of retaliation.

Ultimately, Mr. Sims was not reassigned to a new unit in October 2021. But in January 2022, command staff reorganized the Department, reassigning all members of the Special Investigations Unit—including Mr. Sims—to other divisions. In May 2022, command staff in the Department announced that it would reopen the Special Investigations Unit. Although Mr. Sims applied for one of the vacant positions, he was not selected. Instead, two white officers were selected.

Mr. Sims filed a three-count complaint alleging the following claims:

(1)     retaliation, in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a) ("Count One");

(2)     retaliation, in violation of 42 U.S.C. § 1981, through 42 U.S.C. § 1983 ("Count Two");

(3)     racial discrimination/failure-to-promote, in violation of § 1981, through § 1983 ("Count Three").

(Doc. 45 ¶¶ 140–76). The City has moved for summary judgment as to all claims against it and to strike certain evidentiary exhibits that Mr. Sims filed in opposition to the City's motion for summary judgment. (Docs. 55, 64).

The court **WILL GRANT IN PART** and **DENY IN PART** both motions. Although Mr. Sims has pleaded Count One as a singular count, the claim encompasses two theories of retaliation: (1) the City retaliated against Mr. Sims by reassigning him from the Special Investigations Unit and (2) the City permitted a

hostile work environment. The City has carried its burden as to the first aspect of Mr. Sims's claim but not as to the second. As a result, the court **WILL DENY** the City's motion to the extent that Count One asserts a retaliatory hostile work environment claim. The court **WILL GRANT** the City's motion and **WILL ENTER SUMMARY JUDGMENT** in the City's favor to all other claims.

Because paragraph 27 of Mr. Sims's affidavit directly contradicts his unambiguous deposition testimony without explaining the inconsistency, the court **WILL GRANT** the motion to strike as to that evidence. Because the court did not otherwise consider the evidence to which the City objects, the court **WILL DENY** the motion to strike **AS MOOT**.

## I.    BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true,

historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

In this case, the parties vigorously dispute myriad facts, very few of which have any relevance to the claims before the court. The court's description of the facts, however, is limited to those material to the claims and arguments before it. Accordingly, these are the facts, construed in the light most favorable to Mr. Sims:

Mr. Sims (black)[1] was formerly employed as a police officer by Defendant City of Homewood. (Doc. 53-1 at 3, 37, 39). The Homewood Police Department is organized using the following rank structure: chief of police (most senior), captain, lieutenant, sergeant, and police officer (least senior). (Doc. 53-5 at 19; doc. 53-4 at 9–10). Within that rank structure, officers might also have job assignments such as detective or corporal. (Doc. 53-4 at 9–10; doc. 53-5 at 8).

During most of the time relevant to Mr. Sim's claims, his chain of command appears to have been: Chief Ross (white); Captain Sutton (white); Lieutenant Brundage (white); and Sergeant Marquard (white). (*See* doc. 60-2 at 13–14, 26; doc. 53-4 at 9, 36; doc. 53-1 at 37, 42; doc. 53-5 at 18; *see also* doc. 53-4 at 54–55). Chief Ross is responsible for deciding rank and assignments in the Department. (Doc. 53-1 at 40).

---

[1] This is a racial discrimination and retaliation case. (*See* doc. 45). Accordingly, when the court identifies a City of Homewood Police Department employee for the first time, the court also includes that employee's race.

In 2021, Mr. Sims worked as a detective in the Special Investigations Unit, which had four members, two of whom were white and two of whom were black. (Doc. 53-1 at 39, 42; *see also* doc. 53-4 at 54; doc. 53-2 at 2; doc. 60-2 at 26). In August 2021, Lieutenant Brundage and Mr. Sims discussed reassigning Mr. Sims to a different unit in October 2021 because Mr. Sims was about to exceed the Department's five-year policy for assignments to the Special Investigations Unit. (*See* doc. 53-1 at 42–43; *accord* doc. 53-4 at 54). The Department's policy is "that special assignments typically last five years"; its purpose is to show young officers in the Department that they "would have the ability . . . to do these special assignments at some point in time during their career." (Doc. 53-4 at 33).

Mr. Sims internally complained to Lieutenant Brundage, Chief Ross, and Sergeant Marquard about the proposed reassignment. (*See* doc. 53-4 at 54–55). Mr. Sims asserted that his possible reassignment was not due to the Department's five-year policy but instead because of his race. (*Id.* at 54). To support this assertion, Mr. Sims identified a white officer who had worked at her assignment for more than the policy period and contended that the Department planned to replace him with another white officer. (*See id.*; *see also* doc. 53-5 at 21; doc. 53-4 at 54). Mr. Sims further discussed "a culture of race discrimination/bias" at the Department, listing racist comments made by a white sergeant, the reassignment of a senior black lieutenant to a less desirable position while a more junior white lieutenant took a

more desirable position, and Chief Ross's defensiveness when black officers complained to him about racism in the Department. (Doc. 53-4 at 54; *see also see also* doc. 53-1 at 56–57, 68–70; doc. 60-2 at 14; doc. 53-7 at 4).

Chief Ross directed two members of the internal affairs division, Lieutenant Finch (white) and Sergeant Mote (white), to investigate Mr. Sims's complaint of racial discrimination. (*See* doc. 53-5 at 35–36; *see also id*. at 5, 8, 13, 17; doc. 53-7 at 4, 9; doc. 53-4 at 36). In early September, Sergeant Mote interviewed some of the Department employees mentioned in Mr. Sim's complaint. (*See* doc. 53-5 at 15, 21–29, 38–42). Although Sergeant Mote testified that he interviews "[a]nybody that is listed within the complaint," Sergeant Mote did not interview Mr. Sims or the other black police officers mentioned in Mr. Sims's complaint. (Doc. 53-5 at 15, 46–47; doc. 53-1 at 38). Sergeant Mote determined that Mr. Sims's claims were unfounded. (*See* doc. 53-5 at 43–54).

Because the Department did not interview him or communicate with him about his internal complaint, Mr. Sims believed that the Department was not doing anything about it. (Doc. 53-1 at 38; *accord* doc. 53-4 at 56). On September 8, 2021, Mr. Sims filed his first charge of discrimination with the Equal Employer Opportunity Commission ("EEOC"). (Doc. 53-4 at 56–58).

Mr. Sims testified that after he filed his EEOC charge and internal complaint with the Department, Officer Goodman (black) told him that more senior members

of the Department "indirectly threatened" him. (Doc. 53-1 at 39; *see also* doc. 53-6 at 12). Specifically, he testified that Officer Goodman told him Corporal Whisenhunt (white) had said that he would "whoop [Mr. Sims's] ass" if Mr. Sims's complaints got Corporal Whisenhunt removed from his assignment and Sergeant King (white) had said he "considered [Mr. Sims to be] the enemy." (*Id*. at 39, 41, 44–45; *see also* doc. 53-4 at 60). Officer Goodman, however, testified that no one said anything negative to him about Mr. Sims after he filed his internal complaint with the Department. (Doc. 53-6 at 17). As a result, the court cannot accept as true Mr. Sims's inadmissible hearsay testimony that officers threatened him. *See* Fed. R. Civ. P. 56(c)(2); *see also* Fed. R. Evid. 801(c), 802.

Nevertheless, in October 2021, Mr. Sims amended his original EEOC charge to include a claim of retaliation based, in part, on the statements he contends Officer Goodman told him about. (*See* doc. 53-4 at 59–60). Ultimately, Mr. Sims was not reassigned to a new unit in October 2021. (*See* doc. 53-1 at 39).

In January 2022, the Department reorganized. (*See* doc. 53-4 at 40, 61). Chief Ross testified that this reorganization occurred because the Department wanted to transition the Patrol Division from five eight-hour shifts to four ten-hour shifts. (*Id*. at 40). The Department was previously unable to implement this change because it did not have enough personnel or patrol cars for the shift schedule. (*Id*.). To

"accomplish that new schedule" and "assist . . . with staffing," officers had to be reassigned from special assignments to the Patrol Division. (*Id*.).

So, Mr. Sims and Officer Krawczyk (white) were reassigned from the Special Investigations Unit to the Patrol Division. (Doc. 53-4 at 61; *see also* doc. 53-1 at 42). Both officers had been part of the Special Investigations Unit for more than five years and had the longest years of assignment to the unit. (Doc. 53-1 at 42–43). The remaining two officers in the Special Investigations Unit, Officer Ricketts (white) and Sergeant Marquard, were reassigned to the Criminal Investigations Division. (*See id*. at 42, 66; doc. 53-4 at 40; *see also* doc. 53-7 at 3). In effect, the reorganization dissolved the Special Investigations Unit, and officers assigned to the Criminal Investigations Division did work ordinarily done by that unit. (*See* doc. 53-1 at 66; doc. 53-4 at 40).

But in May 2022, the Department reopened the Special Investigations Unit and solicited applications for that unit. (Doc. 53-4 at 62). Mr. Sims applied and interviewed for one of the positions. (*See* doc. 53-7 at 11). Lieutenant Finch selected Officer Brugge (white) and Officer Hyatt (white) to fill these vacant positions. (Doc. 53-4 at 42, 44, 63; *see also* doc. 53-7 at 11). Mr. Sims was assigned to the Metro Area Crime Center. (Doc. 53-1 at 40; doc. 53-4 at 46).

In February 2023, Mr. Sims resigned from the Department. (Doc. 53-1 at 88).

## II.    DISCUSSION

There is substantial confusion regarding the legal and factual basis for Mr. Sims's claims. Count One is clearly asserted under Title VII. (*See* doc. 45 at 29) (captioned "Count I Title VII") (emphasis omitted). Count Two and Count Three are not as clear because Mr. Sims asserts each claim as a § 1983 claim without specifying the underlying violation. (*See id.* at 31, 34).

To invoke § 1983, a plaintiff must identify an underlying constitutional or statutory violation. *See Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979) (noting that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes"). Mr. Sims does not identify the underlying constitutional or statutory violation for his § 1983 claims. (*See* doc. 45 ¶¶ 150–76). However, because Mr. Sims's brief in opposition to the City's motion invokes 42 U.S.C. § 1981 (doc. 62 at 16), the court construes Mr. Sims's allegations to assert violations of § 1981 for retaliation (Count Two) and racial discrimination (Count Three). (*Compare id.*, *with* doc. 45 ¶¶ 150–76).

As to the factual basis for Mr. Sims's claims, Count Three is clear: Mr. Sims alleges that the Department refused to promote him based on racially discriminatory animus. (*See* doc. 45 ¶¶ 164–76). But the factual basis for Mr. Sims's retaliation claims (Count One and Count Two) is not. In his complaint, Mr. Sims alleged that

the City retaliated against him by: (1) refusing to investigate his complaint of racial discrimination; (2) failing to interview black police officers regarding racism in the Department; (3) officers making negative or threatening comments about Mr. Sims; (4) dissolving the Special Investigations Unit and reassigning Mr. Sims; and (5) reassigning Mr. Sims to the Patrol Division. (Doc. 45 ¶¶ 142, 155; *see also* doc. 53-4 at 59–60).

The City contends that Mr. Sims has abandoned all parts of these claims except the threats made by two officers because, according to the City, Mr. Sims's deposition testimony limited his retaliation claims to those comments. (*See* doc. 56 at 20). The City cites no authority for the proposition that a litigant can abandon the factual basis of his claims through deposition testimony. (*See id*). And in any event, the court does not read Mr. Sims's deposition to unambiguously abandon the other factual basis for his retaliation claims. (*See*, *e.g.*, doc. 53-1 at 37–38, 41–42, 44, 56–57, 62–64). The court therefore construes Mr. Sims's Count One and Count Two to allege two theories of retaliation: (1) the City retaliated against him by reassigning him from the Special Investigations Unit to the Patrol Unit and dissolving the Special Investigations Unit and (2) the City permitted a hostile work environment. (*See* doc. 45 ¶¶ 142, 155; doc. 53-4 at 59–60); *see also Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1334–43 (11th Cir. 2023) (examining these claims separately).

Accordingly, Mr. Sims asserts that the City retaliated against him in violation of Title VII (Count One) and retaliated (Count Two) and discriminated (Count Three) against him in violation of § 1981. The City moves for summary judgment as all claims asserted against it. (Doc. 55). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A plaintiff may prove a claim of intentional discrimination or retaliation through direct or circumstantial evidence. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (discrimination); *Jones v. Gulf Coast Health Care of Del., LLC,* 854 F.3d 1261, 1270–71 (11th Cir. 2017) (retaliation). Mr. Sims has not offered any direct evidence of discriminatory or retaliatory intent, so the only issue in this case is whether he has presented sufficient circumstantial evidence for a reasonable jury to find intentional discrimination or retaliation based on his race.

There are a variety of evidentiary tools Mr. Sims can use to carry this burden. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023). Mr. Sims relies on different methods depending on the claim. (*See*, *e.g.*, doc. 62 at 34, 36). The court examines each claim sequentially, and for each claim, the court begins with the most familiar framework, the *McDonnell Douglas* framework, and then considers the other evidentiary tools discussed by the parties. But before doing

so, the court first dispenses with the City's argument regarding Mr. Sims's damages because this argument applies to all Mr. Sims's claims.

### 1.  Damages

The City contends summary judgment is appropriate for all Mr. Sims's claims because Mr. Sims "suffered no losses." (*See* doc. 56 at 36). The City cites no legal authority for why—as a legal matter—that would defeat Mr. Sims's claims. (*See id*. at 36–37). Without addressing the merits of that specific argument, the court notes that Mr. Sims seeks both monetary damages and injunctive relief against the City. (*See* doc. 45 at 37). The City does not acknowledge Mr. Sims's request for injunctive relief in its argument and seems to presume that Mr. Sims seeks only monetary relief. (*See* doc. 56 at 36–37). The court therefore is unpersuaded by the City's argument because it is legally and factually incomplete.

### 2.  Retaliation (Count One and Count Two)

In Count One and Count Two, Mr. Sims asserts a claim of retaliation under Title VII and § 1981. (*See* doc. 45 ¶¶ 140–63). "Both statutes require the same proof and analytical framework." *Berry*, 84 F.4th at 1307. And the City and Mr. Sims discuss these claims together. (*Compare* doc. 56 at 18, *with* doc. 62 at 31–32).

But the City makes one argument about municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) that applies only to Count Two. (*See* doc. 56 at 32–36); *compare Monell*, 436 U.S. at 691 (considering whether a

municipality is a "person" under § 1983), *with* 42 U.S.C. § 2000e(a) (including "governments, governmental agencies, [and] political subdivisions" in its definition of "person" under Title VII). So, the court examines the City's arguments regarding the sufficiency of Mr. Sims's evidence for Count One and Count Two together, but the City's arguments regarding municipal liability separately.

### a.  Retaliatory Work Assignment (Count One and Count Two)

"To survive summary judgment, [Mr. Sims] must present a story, supported by evidence, that would allow a reasonable jury to find that the [City] engaged in unlawful retaliation against" him. *Berry*, 84 F.4th at 1311. The parties make arguments about various methods of satisfying the circumstantial evidence standards, the court will address each in turn.

### i.   The *McDonnell Douglas* Framework

The *McDonnell Douglas* analysis is a three-step burden shifting framework. *Berry*, 84 F.4th at 1307. "First, the employee must establish a prima facie case of retaliation . . . ." *Id*. If he can do so, the burden shifts to the employer to identify "a legitimate, nonretaliatory reason for" its conduct. *Id*. Third, the burden shifts back to the employee to "prove that the employer's proffered reason was a pretext for retaliation." *Id*. The court's analysis begins and ends at the first step.

To establish a prima facie case of retaliation, Mr. Sims must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and

(3) "there was a causal connection between the protected activity and the adverse employment action." *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The City does dispute that reporting race discrimination is a protected activity. (*See* doc. 56 at 19–25). The City instead contends that Mr. Sims's reassignment was not an adverse employment action, and even if it was, there is no causal connection between the Department's reorganization and Mr. Sims's internal complaint. (*Id.* at 24–25).

Mr. Sims does not address the City's arguments about the prima facie case, instead attempting to rebut legitimate, nonretaliatory reasons that the City has not offered. (*See* doc. 62 at 32–42). But Mr. Sims cannot avoid his initial burden of making out a prima facie case by skipping ahead to the pretext analysis. By failing to respond to the City's argument about the prima facie case, Mr. Sims has forfeited the issue. *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 & n.4 (11th Cir. 2022). Nevertheless, because Mr. Sims has made some arguments about causation related to pretext (doc. 62 at 32–33), the court will construe his brief as contesting the City's prima facie-stage causation arguments.

The causation standard at the prima facie stage requires only that Mr. Sims "show[] that the protected activity and the adverse action were not wholly unrelated." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 & n.13 (11th Cir. 2020) (en banc) (quotation marks omitted). Mr. Sims complained about race

discrimination in the Department on August 27, 2021 and filed his original and amended EEOC charges on September 8, 2021 and October 13, 2021, respectively. (*See* doc. 53-4 at 54–60). In January 2022, the Department reorganized, and Chief Ross reassigned Mr. Sims from the Special Investigations Unit to the Patrol Division. (*See id*. at 40, 61). Chief Ross testified that the reason for Mr. Sims's reassignment in January 2022 was because of shift hour changes in the Patrol Division. (Doc. 53-4 at 40). Chief Ross further testified that the reason the Department had not previously made this change was because the Department "didn't have enough manpower . . . or . . . enough cars at one time to implement it." (*Id*.).

Mr. Sims contends that the timing of this reorganization is suspect because he learned about the reorganization and reassignment "[w]ithin weeks" of filing his amended EEOC charge. (*See* doc. 62 at 32). But Mr. Sims has presented no evidence about when he learned about the reorganization and reassignment. (*See id*.). The only evidence before the court is that he was reassigned in January 2022, when the Special Investigations Unit was dissolved. (*See* doc. 53-4 at 50, 61).

A "very close temporal proximity between a protected activity and an adverse action can create an inference of causation." *Berry*, 84 F.4th at 1309 (quotation marks omitted). But "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Thomas v.*

*Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *accord Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1328 (11th Cir. 2020) ("[E]ven when the disparity is only two weeks, [the Eleventh Circuit] ha[s] suggested that such proximity is probably insufficient to establish pretext by itself.") (quotation marks omitted). Accordingly, the three-month delay between October 2021, when Mr. Sims amended his EEOC charge, and January 2022, when his reassignment occurred, is insufficient to create an inference of causation.

Mr. Sims also contends that his reassignment was suspect because the reorganization "caused more scheduling issues," and four months later, the Department decided to reopen the Special Investigations Unit. (Doc. 62 at 33). But it is not the role of federal courts to "second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). So, the fact that the City implemented a reorganization that was ultimately unsuccessful is irrelevant so long as the reorganization was not implemented with a discriminatory motive. *See id*. And Mr. Sims has not adduced any evidence to contradict Chief Ross's testimony that the reorganization did not have a discriminatory motive. (*Compare* doc. 53-4 at 40, *with* doc. 62 at 32–33).

Accordingly, Mr. Sims has failed to create a genuine dispute of material fact regarding whether his reassignment was caused by a discriminatory motive under the *McDonnell Douglas* framework.

## ii.   Convincing Mosaic

"[T]he *McDonnell Douglas* framework is not the only way to prove retaliation." *Berry*, 84 F.4th at 1310. "Without relying on the *McDonnell Douglas* framework, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Id*. This evidentiary approach is often referred to as presenting a "convincing-mosaic" of circumstantial evidence. *Id*. at 1310–11 (quotation marks omitted). The Eleventh Circuit has "identified three nonexclusive categories . . . that can raise a reasonable inference of unlawful conduct: evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." *Id*. at 1311.

Mr. Sims's argument relies on the same evidence previously discussed: an allegedly suspicious timing between his amended EEOC charge and the reorganization as well as the ultimate abandonment of the reorganization plan. (*See* doc. 62 at 32–33, 35). But for the same reasons discussed above, viewing this

evidence in its totality and construing it in Mr. Sims's favor, it still does not create a reasonable inference of retaliatory intent.

### iii.   Mixed-Motive Framework

Mr. Sims also argues the sufficiency of his evidence under the mixed-motive framework. (*See* doc. 62 at 36). But as the City argues, the mixed-motive framework does not apply to retaliation claims. (Doc. 65 at 12); *accord Yelling*, 82 F.4th at 1338. The court therefore rejects this argument.

Having considered all potential frameworks, tools, and legal metaphors presented by the parties, Mr. Sims has failed to create a genuine dispute of material fact regarding whether retaliation caused his January 2022 reassignment. Accordingly, the court **WILL GRANT** the City's motion as to Counts One and Two to the extent those claims are based on Mr. Sims's 2022 reassignment. The court **WILL ENTER SUMMARY JUDGMENT** in the City's favor as to those claims.

### b.   *Retaliatory Hostile Work Environment (Count One and Count Two)*

In Count One and Count Two, Mr. Sims also alleges retaliatory hostile work environment claim under Title VII and § 1981, respectively. These claims are based on the Department's investigation of Mr. Sims's internal complaint and comments from Mr. Sims's coworkers about his complaint during the investigation. (See doc. 45 ¶¶ 142, 155; doc. 53-4 at 59–60); *see also supra* at 9–10. The City argues that summary judgment is appropriate because (1) Mr. Sims has not presented admissible

evidence regarding comments from his coworkers and (2) the Department's internal investigation is not actionable retaliation. (*See* doc. 56 at 21–22, 24). The court examines each argument in turn.

### i. The Comments from Mr. Sims's Coworkers

The City contends that Mr. Sims has presented no admissible evidence that his coworkers made comments or threats about him. (*See* doc. 56 at 21–22; *compare* doc. 53-1 at 39, 41, 44–45, *and* doc. 53-4 at 60, *with* doc. 53-6 at 17). As discussed *supra* at 7, the court agrees that this evidence is inadmissible hearsay, and the court does not consider it. Because Mr. Sims has not presented admissible evidence that his coworkers made comments or threats about him, the court **WILL GRANT** the City's motion as to that aspect of his claims.

### ii. The Department's Investigation of Mr. Sims's Complaint

The remaining aspect of Mr. Sims's retaliatory work environment claims are based on the Department's investigation of Mr. Sims's internal complaint. The alleged mistreatment "is actionable . . . only if the mistreatment well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020).

The City contends that these claims are not viable for two reasons. First, the City asserts that Mr. Sims's complaint "was fully investigated and determined to be

unfounded." (Doc. 56 at 24). Second, the City argues that a "failure to investigate, standing alone, is not an adverse employment action." (*Id.*). Both arguments fail.

First, the City asks the court to impermissibly draw factual inferences in its favor. Sergeant Mote did not interview the black officers mentioned in Mr. Sims's complaint even though he interviews "[a]nybody that is listed." (*Compare* doc. 53-5 at 15, *with id.* at 46–47, *and* doc. 53-1 at 38, *and* doc. 53-6 at 18). Drawing all inferences in Mr. Sims's favor, a reasonable jury could find that Mr. Sims's allegations were not "fully investigated" (*see* doc. 56 at 24) because contrary to his own policy, the investigator interviewed only white officers and omitted all black officers that Mr. Sims mentioned in his complaint.

Second, retaliation claims are "actionable *whether or not* the mistreatment rises to the level of a tangible employment action." *Monaghan*, 955 F.3d at 861 (emphasis added); *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1207 (11th Cir. 2021) (reiterating that "'retaliatory-hostile-environment claims' [are] really . . . retaliation claims"). So, whether a failure to investigate is itself an adverse employment action is irrelevant, so long as the mistreatment "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Monaghan*, 955 F.3d at 861. The City has offered no argument about why its failure to fully investigate a complaint of discrimination would not meet this standard. (*See* doc. 54 at 24).

Accordingly, the court **WILL DENY** the City's motion as to Count One to the extent that Mr. Sims's claim is based on the Department's investigation of his internal complaint. Because the City presents an additional argument that is unique to Count Two, *see supra* at 12–13, the court's analysis proceeds as to that claim.

### iii.    Municipal Liability (Count Two)

The City asserts that municipal liability is improper because Mr. Sims has failed to identify a policy or custom that perpetuated inadequate training regarding racial discrimination. (Doc. 56 at 35–36). Mr. Sims responds that because the City has an "unofficial custom or policy" of disregarding black officers' complaints or failing to investigate the same with the level of care extended to white officers' complaints. (*See* doc. 62 at 38–39). On reply, the City contends that Mr. Sims has not identified "a persistent and widespread practice" to sustain his unofficial custom or policy allegations. (*See* doc. 65 at 10).

Establishing municipal liability is "difficult." *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami*, 637 F.3d 1178, 1189 (11th Cir. 2011). Mr. Sims must identify: (1) "evidence that the municipality was aware of the need to train or supervise its employees in a particular area" and (2) "evidence . . . that the municipality made a choice not to" properly train its employees despite that notice. *Id*. Mr. Sims has not met this burden.

First, Mr. Sims does not identify "evidence that the municipality was aware of the need to train or supervise its employees in a particular area." *Compare id.*, (*with* doc. 62 at 39). Mr. Sims asserts—without citation to the evidentiary record—that Chief Ross allowed race-based double standards within the Department because he did not "conduct a top-to-bottom assessment of racism" and instead allowed each complaint to be investigated on a case-by-case basis. (*See* doc. 62 at 39). But that assertion, irrespective of its evidentiary support, does not explain how a reasonable jury could find that the City "was aware of the need to train or supervise its employees" regarding investigations of internal complaints. *See Am. Fed'n of Lab. & Cong. of Indus. Organizations*, 637 F.3d at 1189.

Second, Mr. Sims does not identify an evidentiary basis for a reasonable jury to find that the City "made a choice not to" properly train its employees regarding investigations of internal complaints. *Compare Am. Fed'n of Lab. & Cong. of Indus. Organizations*, 637 F.3d at 1189, *with* (doc. 62 at 39). Indeed, Mr. Sims does not appear to acknowledge this requirement at all. (*See* doc. 62 at 39). Accordingly, the court **WILL GRANT** the City's motion as to Count Two and **WILL ENTER SUMMARY JUDGMENT** in the City's favor as to that claim.

### 3.  Failure to Promote (Count Three)

In Count Three, Mr. Sims asserts a § 1981 claim of racial discrimination under a failure-to-promote theory. (*See* doc. 45 ¶¶ 164–76). This claim is based on the

City's decision to hire two white officers instead of Mr. Sims to the Special Investigations Unit in July 2022 when the Department decided to reopen that unit. (*See* doc. 45 ¶¶ 167–73; doc. 53-1 at 40, 49; doc. 53-4 at 44, 46, 63; doc. 53-6 at 21; doc. 53-7 at 11).

The City moves for summary judgment on this claim on the grounds that (1) the position he was denied was not a promotion; (2) the City had legitimate non-discriminatory reasons not to promote him and Mr. Sims cannot rebut those reasons; and (3) Mr. Sims cannot satisfy the standard to hold the City liable as a municipality. (*See* doc. 56 at 26–32). Mr. Sims responds that he can prevail based on the existence of valid comparators and the Department's "culture" of racism, but even if he could not, the claim can survive under a mixed-motive theory. (Doc. 62 at 34–38).

### i.   The *McDonnell Douglas* Framework

"To establish a *prima facie* case of race discrimination based on a failure-to-promote theory, a plaintiff must show that he (1) belonged to a protected class; (2) was qualified for and applied for a position that the employer was seeking to fill, (3) was rejected despite his qualifications, and (4) that the position was filled with" other equally or less qualified employees who were not members of the protected class. *Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023) (quotation marks omitted); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997).

23

The burden of proving these elements "remains at all times with" Mr. Sims. *Anthony*, 69 F.4th at 807 (quotation marks omitted).

As an initial matter, the City contends that the denied reassignment to the Special Investigations Unit was not a "promotion" because "there was no change in rank or pay," and according to the City, a perceived loss of prestige is not actionable. (Doc. 56 at 26) (quotation marks omitted). Mr. Sims does not address this argument and instead presumes that the denied reassignment was a promotion. (*See* doc. 62 at 34–48). But even though Mr. Sims does not respond to the City's argument, the court rejects it.

The City relies on an unpublished opinion from the Eleventh Circuit for its position. (Doc. 56 at 26) (citing *Weston-Brown v. Bank of Am.*, 167 F. App'x 76, 80 (11th Cir. 2006)). In *Weston-Brown*, the Eleventh Circuit relied on caselaw describing adverse employment actions to discern if a change in position would be a promotion. 167 F. App'x at 79–80. But published caselaw provides that a "reduction in pay, prestige or responsibility" can be an adverse employment action. *Hinson v. Clinch Cnty*, 231 F.3d 821, 829 (11th Cir. 2000). Accordingly, the court is unpersuaded by the City's first argument.

The City next contends that Mr. Sims cannot establish the fourth element of his prima facie case because he was unaware of the qualifications of the white officers selected to fill the position. (Doc. 56 at 29–30) (citing doc. 53-1 at 49).

Indeed, Mr. Sims testified that he did not know the qualifications of the white officers who were assigned to the Special Investigations Unit in July 2022. (Doc. 53-1 at 49).

Mr. Sims responds with two arguments. First, Mr. Sims asserts, without supporting citations, that "[a]s noted . . . in the evidentiary record, a reasonable juror could find that [Mr. Sims] was as or more qualified to fill the [July] 2022 [the Special Investigations Unit] position than either of the" officers who filled those roles. (Doc. 62 at 38). As an initial matter, this argument does not comply with the court's initial order which directs the parties to "specifically reference[]" evidentiary materials with "the CM/ECF document, page, and, when appropriate, line number." (Doc. 29 at 18–19).

It appears that Mr. Sims intended to refer to his own affidavit in which he attests that he "was aware of the qualifications of the officers . . . selected . . . to fill" those positions. (Doc. 60-1 ¶ 27). But this sworn statement directly contradicts Mr. Sims's deposition testimony in which he testified that he was not aware of their qualifications. (*Compare id.*, *with* doc. 53-1 at 49). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Accordingly, the court does not consider the statements in Mr. Sims's affidavit that contradict his deposition testimony without explaining the inconsistency.

Second, Mr. Sims contends that the City "has produced no evidence that he was not" more qualified than the white officers who were assigned to the Special Investigations Unit in July 2022. (Doc. 62 at 34). But that is not the City's burden. Because Mr. Sims bears the burden of establishing the elements of his prima facie case at trial, *see Anthony*, 69 F.4th at 807, the City "need not support its motion with affidavits or other similar material *negating*" those elements, *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1336 n.7 (11th Cir. 2023) (quotation marks omitted; emphasis in original). "Instead, [the City] may simply point out . . . that there is an absence of evidence to support [Mr. Sims's] case." *Willis*, 77 F.4th at 1336 n.7 (quotation marks omitted).

And the City has done just that. On this record, Mr. Sims failed to produce evidence that the position was filled by someone equally or less qualified than him. Mr. Sims testified that he did not know the qualifications of officers selected to fill the position, yet he contends, without evidentiary support, that he was more qualified for this position. (*See* doc. 53-1 at 49; *but see* doc. 62 at 34, 38). Accordingly, Mr. Sims has failed to create a genuine dispute of material fact under the *McDonnell Douglas* framework regarding whether the City discriminated against him when it did not promote him to the Special Investigations Unit in July 2022.

### ii.    Convincing Mosaic

Mr. Sims argues that he can demonstrate a convincing mosaic of discriminatory motives for his disparate treatment because: (1) Lieutenant Brundage "groomed" Officer Brugge to take his place back in 2021, (2) there was a discriminatory culture at the Department, (3) the City mayor did not "encourage Homewood employees who believe they've been discriminated against to come forward," and (4) a lack of prior notice regarding performance issues and other work-related deficiencies. (Doc. 62 at 34–35, 37, 39). But none of that evidence is material to the inquiry before the court.

At this stage, the court must discern whether "the record, viewed in a light most favorable to [Mr. Sims], presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks omitted). Lieutenant Finch assigned the two white officers to the Special Investigations Division in lieu of Mr. Sims. (Doc. 53-4 at 42; doc. 53-7 at 11). Accordingly, Lieutenant Finch is the relevant decisionmaker.

Mr. Sims did not produce any evidence that "would allow a jury to infer intentional discrimination by" Lieutenant Finch. *See Smith*, 644 F.3d at 1328. Accordingly, Mr. Sims has failed to present a triable issue as to the Lieutenant Finch's intent.

### iii.   Mixed-Motive Framework

Mr. Sims argues that he can prevail under a mixed-motive theory. (Doc. 62 at 36). The City responds that this theory of liability is foreclosed because it was not previously asserted in the litigation. (Doc. 65 at 14). The court disagrees.

The complaint alleges that "[b]ut for [Mr. Sims's] race, [b]lack, [the City] would not have refused to promote [him] for the position he applied for, and/or [his] race was, at the least, a motivating factor in [the City's] refus[al] to promote [him] for the re-opened Special Investigations Unit Detective position." (Doc. 45 ¶ 109). Although conclusory pleaded, this allegation identifies the standard for both mixed-motive and single-motive claims. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

In its reply brief, the City argues that Mr. Sims's mixed-motive claim fails (doc. 65 at 14–17), but this argument comes too late. A party cannot raise an argument for the first time in a reply brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Accordingly, the court will not consider the City's argument.

But the claim fails for a different reason: this a § 1981 claim, *see supra* at 9, and the mixed motive analysis "do[es] not apply to § 1981 claims," *Mabra v. United Food & Com. Workers Loc. Union No. 1996*, 176 F.3d 1357, 1357 (11th Cir. 1999). The City does not raise this argument (*see* doc. 56 at 26–30; doc. 65 at 14–17), and

the court cannot make this argument on the City's behalf, *see Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."). So, the court will not grant summary judgment on that basis and will, instead, consider the last argument properly asserted by the City: whether municipal liability is proper.

### iv.   Municipal Liability

The City argues that municipal liability is improper because "[t]here is no evidence that [Lieutenant] Finch was a 'decision maker' for [Homewood Police Department] policies." (Doc. 56 at 32). Mr. Sims does not respond to this argument. (*See* doc. 62 at 38–39).

"Municipalities, such as [the City], cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003). Instead, "[m]unicipal liability may arise with regards to an employment decision . . . provided that the decisionmaker possesses *final authority* to establish *municipal policy* with respect to the action ordered." *Id.* (quotation marks omitted). This final authority requirement "preclude[s] § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." *Id.* (quotation marks omitted).

A "decisionmaker" is not always a "policymaker." *Id.* at 1325–26. Therefore, federal courts must determine whether the decisionmakers are the final policymakers by "identify[ing] those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784–85 (1997) (quotation marks omitted).

The record is unclear regarding who possesses final authority to establish municipal policy with respect to the City's employment practices. The City mayor testified that the City institutes citywide policies regarding employment practices and individual departments may also develop such policies. (Doc. 60-3 at 13–14). Chief Ross testified that "if the mayor had a concern regarding any policy or practice within the Homewood Police Department," he could discuss that policy with the chief because Chief Ross "work[s] for him." (Doc. 53-4 at 17). None of this evidence answers the question of *who* has final authority over the City's employment practices but it all suggests that Lieutenant Finch does not.[2]

Because Mr. Sims does not respond at all to the City's argument (*compare* doc. 56 at 32, *with* doc. 62 at 38–39), he has failed to identify a genuine dispute of

---

[2] To be clear, although Lieutenant Finch was the decision maker as which police officer filled the position in the Special Investigations Unit, *see supra* at 27, the evidence before the court establishes that Lieutenant Finch was not the final policymaker for the City's antidiscrimination employment policies.

material fact on this issue. Accordingly, the court **WILL GRANT** the City's motion as to Count Three.

### 4.  The City's Motion to Strike (Doc. 64)

The City moves to strike certain evidentiary materials filed by Mr. Sims. (*See* doc. 64). The court **WILL GRANT** the motion as to paragraph 27 of Mr. Sims's affidavit, which contradicted Mr. Sim's deposition testimony without explanation. (*See* doc. 60-1 ¶ 27); *see also supra* at 25 (citing *Van T. Junkins & Assocs., Inc.*, 736 F.2d at 657). The court did not otherwise consider these evidentiary materials to rule on the pending motion. Accordingly, the court **WILL DENY** the motion to strike **AS MOOT** as to all other evidence to which the City objects.

## III.   CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** the City's motions. (Docs. 55, 64). This case will proceed to trial to the extent that Count One is based on the Department's investigation of Mr. Sims's internal complaint.

The court will enter a separate partial summary judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 16, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE